HACKENSACK WATER COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, DEFENDANT.

Argued October 7, 1922—Decided December 7, 1922.

1. The board of public utility commissioners in fixing rates for a water company must take in consideration the present value of the property devoted to public use, which includes the amount expended by the company for improvements, and the board cannot state an average of the amount expended during a period of two years, in order to counteract an abnormal condition in regard to costs said to have existed in one year.

2. The board of public utility commissioners are directed by statute to fix just and reasonable rates for a public utility whenever the board shall determine any existing rate to be unjust, unreasonable, insufficient, &c. Plainly, deficiencies in earnings accumulated under rates previously fixed by the board must be considered in fixing a new rate which will be fair and reasonable.

---

On *certiorari.*

For the prosecutor, *Collins & Corbin* and *William M. Wherry, Jr.*

For the defendant, *Thomas Brown.*

The opinion of the court was delivered by

SWAYZE, J. This is a continuation of the case which has been before the courts. 96 *N. J. L.* 184. The Court of Errors and Appeals affirmed the judgment of this court except with reference to the city of Hoboken. The contro-

versy with Hoboken has since been terminated by the decision of the board of public utility commissioners in the further proceedings there ordered, and no appeal has been taken from their action. In these proceedings the Hackensack Water Company filed a new schedule, the operation whereof was suspended until the new hearing. Upon this hearing the board disapproved the rates the company had filed as unjust and unreasonable, and fixed a schedule of rates which they estimated would produce $913,785 a year.

The new order of the board was thereupon brought before the Supreme Court pursuant to the provision of the statute. A question was raised whether *certiorari* was the proper remedy, but a *certiorari* issued as the statute permits. The company challenges the finding of the board. Three questions are raised:

1. The prosecutor complains that the return possible under the rate allowed by the board is inadequate. The board found that a fair return for the company was a sum between $925,000 and $950,000 a year. The lesser of these sums is higher than the board's own estimate of the return that the rates allowed would produce. This of itself, to say the least, causes suspicion of the reasonableness of the rates.

2. The company complains that the board has failed to allow for additions made by the company to the property at a cost of $700,000. These additions were made after December 31st, 1920. The rates fixed by the board are for the year 1922, and the new schedule was filed in January, 1922. It is not denied that $700,000 worth of improvements were omitted by the board in ascertaining the value of the property devoted to public use. The board seems to have thought they had the right to strike an average of the two years, 1920 and 1921, in order to counteract abnormal conditions that are said to have existed in 1921. The difficulty is that the statute does not provide for that rough-and-ready method. The present value must be taken as the value of the property devoted to public use. An arbitrary date is as unlawful as an arbitrary rate. *Public Service Co.* v. *Public Utility Board,* 84 *N. J. L.* 463; *affirmed,* 87 *Id.* 705; *Eliza-*

*bethtown Gas Light Co.* v. *Board of Public Utility Commissioners,* 95 *Id.* 18.   The date of December 31st, 1920, is none the less arbitrary, because it is expected by the board to result in a fair average rate.   It is conceded that the method adopted does not show the value of the property at the time of filing the schedule of rates by the company; the value as fixed falls short by at least $700,000.   If the possibility of too high a rate was to be avoided the proper way would have been to make the rate that much lower or higher as the case might require, not to adopt a fictitious value for the property.

3. The company makes another valid objection.   The board omitted to consider deficiencies in earnings accumulated under rates fixed by the commission which did not produce a fair return.   The board relies upon the recent decision of the United States Supreme Court in *Galveston Electric Co.* v. *Galveston,* 42 *Sup. Ct. Rep.* 351, but this view of the effect of that decision seems erroneous.   Mr. Justice Brandies says: "A company which has failed to secure from year to year sufficient earnings to keep the investment unimpaired and to pay a fair return, whether its failure was the result of imprudence in engaging in the enterprise, or of errors in management, or of omission to exact proper prices for its output, cannot erect out of past deficits a legal basis for holding confiscatory for the future rates which would, on the basis of present reproduction value, otherwise be compensatory."

It might well be held that the court, in naming these three species of deficits (imprudence in engaging in the enterprise, errors in management, and omission to exact proper prices), meant to make an enumeration of the cases to which the opinion applies, none of which is the present case, but it is unnecessary to go as far as that, and it may be conceded that the list is not a complete enumeration, and that other causes may occur which may stand on the same legal footing. Be that as it may, the reasoning of the opinion applies only to deficits due to the conduct of the public utility itself, and does not justify the refusal to include deficits that are due

to the acts of the public authorities alone. The language of the act is persuasive to the contrary. The power given to the board of public utility commissioners is to fix just and reasonable rates whenever the board shall determine any existing rate to be unjust, unreasonable, insufficient and unjustly discriminatory or preferential. Plainly, rates that for a series of years fail to produce a reasonable return upon a proper valuation are not the just and reasonable rates authorized by the statute, and the board cannot lawfully fix such rates unless by way of experiment, subject to change when the inadequacy is shown. If it were possible to determine by mere inspection the reasonableness of rates, it would at once be seen that rates which fail to produce a reasonable return could not be reasonable rates as the statute requires. The difficulty arises from the fact that in business operations it is impossible to tell by mere arithmetical processes what the effect of a given rate may be and, as suggested in *Public Service Gas Co.* v. *Board of Public Utility Commissioners, supra,* the effect can only be ascertained by trial. It is to be sure not for the public utility board to guarantee a rate to the Public Utility Company, and I agree that it would be improper to allow the Public Utility Company to capitalize its losses, but when the public authorities force upon the Public Utility Company against its will a rate which proves not to be a reasonable rate, there is nothing unfair in holding the public to a guarantee that the rate fixed shall come within the authority given by the statute and be just and reasonable. The question is who shall pay the cost of the experiment. The consumers may fairly be charged with the cost of experiments undertaken by their agents for their benefit. The difficulty is to determine how the cost may be fairly distributed. To allow all deficits to be capitalized and added to the base value would be unjust to future consumers, who would be burdened perpetually for the cost of the necessary experiment. To make up the loss of the company by increase in the rate for a single year would impose an undue burden on present consumers. The usual method of correcting the error, after the loss is ascertained, is by

amortization, by allowing an additional charge, that is a higher rate, for such length of time as will suffice to wipe out the deficit. The consumer will then pay the cost of the experiment, but it will be so distributed that it may be paid during what may be called the life of the experiment. In the present case the public utility commission failed to pay any regard to these deficits which they themselves had caused. We cannot determine what would be a proper length of time over which to distribute the reimbursement of the cost so that the Public Utility Company may in the end receive the just and reasonable rate to which it is entitled by the statute. There are no data in the record which enable us to determine it. It can only be done on a rehearing.