In the Matter of the Application of the PENNSYLVANIA GAS COMPANY, Petitioner, for a Certiorari Order against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent. CITY OF JAMESTOWN, Intervenor.

Third Department, January 7, 1925.

Gas and electricity — certiorari to review action of Public Service Commission in fixing rate base and rates to be charged for natural gas — petitioner is Pennsylvania corporation selling gas in New York — Appellate Division will not, on certiorari, exercise independent judgment as to both facts and law — facts will be reviewed only to extent of determining whether determination of Commission is supported by substantial evidence — there is no substantial evidence to support finding that gas lands of petitioner allocated to New York have value of $2,000,000 — Commission should have taken into consideration materials, supplies and capital requirements used in Pennsylvania to conduct New York business — Commission should reconsider percentage of depreciation on physical properties other than gas lands — failure of Commission to allow additional sum for going concern value not disapproved — depletion of gas lands and other physical properties improperly determined from bookkeeping entries there being other competent evidence — error to exclude Federal income taxes as part of operating expenses — error to exclude investments in Pennsylvania and deduct income therefrom — adequacy of eight per cent return not determined — petitioner not entitled to recoup for losses sustained under prior erroneous rates fixed by Commission.

On certiorari to review the action of the Public Service Commission in fixing a rate base and rates to be charged by the petitioner, a Pennsylvania corporation selling natural gas in the State of New York, the Appellate Division will not review the facts for the purpose of arriving at an independent judgment as to the rate base and rates to be charged, but will only review the facts for the purpose of determining whether or not there is any substantial evidence to sustain the findings of the Public Service Commission. The petitioner was not confined to the remedy of certiorari but could have presented the question whether or not the rates established were confiscatory, in an equity action to restrain their enforcement, and that remedy being open to the petitioner, the Appellate Division will not be justified in so interpreting the power it has under section 1304 of the Civil Practice Act as to include the right to exercise an independent judgment upon both the facts and the law.

**254** Matter of Pennsylvania Gas Co. *v.* Pub. Serv. Comm.

Third Department, January, 1925. [Vol. 211

A review of the evidence in connection with the opinions written by the Public Service Commission demonstrates that there was no substantial evidence to support the finding of the Commission which allocated to the State of New York, for the purpose of a rate base, the sum of $2,000,000 as representing the value of gas lands.

The Public Service Commission should have taken into consideration, in determining the rate base, the materials and supplies and capital requirements needed for use in the State of Pennsylvania in order to conduct the New York business, and, therefore, the Commission should reconsider that item in the light of testimony which it is claimed establishes the necessity of increasing the allowance for both working capital and supplies.

The Commission having deducted twenty-nine per cent for depreciation on the physical properties other than gas lands located in New York and forty-one per cent for depreciation on similar property in Pennsylvania and having purported to value both properties on the same basis, it should reconsider this element of the case.

The action of the Commission in not allowing an additional sum for going concern value in determining the rate base is not disapproved.

The Commission should reconsider the subject of annual depletion of gas lands and annual depreciation of other physical properties which it determined solely upon a calculation made from bookkeeping entries, since it appears that annual depletion is susceptible of proof, and that such proof was offered, and also, that the depreciation of other physical properties was shown by testimony introduced by the petitioner.

It was error for the Commission to exclude Federal income taxes as a part of operating expenses, and to exclude the value of stocks and bonds representing the Pennsylvania investments in determining the rate base and at the same time deduct the income from those investments from the revenue otherwise held properly allowable to the company.

The Appellate Division expresses no opinion with reference to the adequacy of eight per cent rate of return, except that the Commission should give consideration to the amount of leakage of gas reasonably necessary in rendering its service; to any greater intrinsic value of natural gas to the consumers, in heat units and price, as compared to manufactured gas and other commodities used as fuel; to the hazards of the natural gas business; to the present value of the plant as compared to its cost; to the rate of return which the company has enjoyed in the past; and to the fact that the rate of return must be such as to avoid an unreasonable burden upon interstate commerce.

The Appellate Division refuses to hold, as a matter of law, that the Public Service Commission should have fixed a rate sufficient to permit the petitioner to recoup for loss of revenue due to the prior erroneous determinations by the Public Service Commission, since the petitioner seems to have acquiesced in reserving that question for later determination by the Public Service Commission and has failed to take advantage of other opportunities afforded to it under which its rights might have been judicially protected.

Certiorari order granted out of the Supreme Court at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 8th day of November, 1923, directed to the Public Service Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in

fixing rates to be charged by petitioner for natural gas sold to consumers in the city of Jamestown, N. Y., and adjoining territory.

In May, 1917, the petitioner put into effect in that city a previously filed tariff showing an increase over that previously in effect within that city of five cents per 1,000 cubic feet. Practically the increase was from thirty to thirty-five cents per 1,000 cubic feet for domestic consumers. Private consumers made and filed complaint. The city of Jamestown was made a party complainant. Various proceedings were had testing the jurisdiction of the Commission to fix petitioner's rates, it being urged by petitioner that its business was one of interstate commerce involving the sale in Jamestown of gas transported from the State of Pennsylvania. The jurisdiction of the Commission was finally upheld. (*Pennsylvania Gas Co.* v. *Public Service Commission*, 252 U. S. 23, affg. 225 N. Y. 397.) Hearings upon the merits were commenced in April, 1919. On December 23, 1920, the Commission handed down a final decision. Two opinions were written. (*Davis* v. *Pennsylvania Gas Co.*, 25 State Dept. Rep. 200.) Rehearing was applied for by the company. Before determining whether a rehearing would be granted, the Commission which granted the original order passed out of existence under new legislation and a new Commission, the present Commission, took its place. A rehearing was had and another order was made by the present Commission on June 15, 1921. A memorandum opinion was written by one of the commissioners, the interpretation of which has given rise to differences of opinion important to be considered upon this review. From the decision so made, certiorari was taken to this court and upon our interpretation of the final opinion of the Commission in the light of the previous opinions the decision was annulled and the matter remitted to the Commission. (*People ex rel. Pennsylvania Gas Co.* v. *Pub. Serv. Comm.*, 204 App. Div. 73.) Following such determination by this court, hearing was had before the Commission and by stipulation of the parties the matter was resubmitted to the Commission upon the previous record without additional testimony. At the hearing the petitioner demanded that the determination of the Commission be corrected in accordance with the decision of this court by restoring to the rate base the $2,333,709 which had erroneously been deducted as amortization reserve. And petitioner further demanded that it be given compensation by the new rates to be fixed for the revenue of which it had been illegally deprived under the rates allowed by the Commission in its previous erroneous orders. In a final decision, handed down July 12, 1923, the Commission, fixing a new flat rate of fifty cents per 1,000 cubic feet, rendered a further opinion in which it escaped

**256** MATTER OF PENNSYLVANIA GAS CO. *v.* PUB. S. RV. COMM.

Third Department, January, 1925. [Vol. 211

the direct effect of our opinion by denying that it had previously adopted the *modus operandi* of the old Commission as to deduction of amortization reserve. It stated that its former determination as to rate base had been reached " after an examination of the entire record, irrespective of any theory adopted by the former Commission in arriving at the valuations found by it." (*Davis* v. *Pennsylvania Gas Co.*, 30 State Dept. Rep. 143.) The Commission has now fixed the New York share of the company's gas lands at $2,000,000 instead of $3,216,000 as fixed by the old Commission in its opinion of December 23, 1920, and which we assumed the present Commission had fixed in its opinion of June 15, 1921, as the undepreciated value of the gas lands allocated to New York. No allowance was made for loss of revenue under the rates fixed by the two previous orders of the Commission. The present certiorari is from that decision of the Commission of July 12, 1923.

*Marion H. Fisher* [*John E. Mullin* of counsel], for the petitioner.

*Thrasher & Clapp* [*Louis L. Thrasher* of counsel], for the intervening respondent, City of Jamestown.

HINMAN, J.:

The numerous issues now presented are to a large extent the issues presented upon the former review. The main reason assigned for such repetition is the renewed contention of petitioner, not expressly passed upon in our former opinion, that it is entitled to raise the question of confiscation of its property under the rate fixed by the Commission; that upon the determination of that question in a certiorari proceeding it is entitled to the independent judgment of the court upon the facts as well as the law; and that if this court does not possess the power in this proceeding to exercise its own independent judgment upon both the law and the facts, the statute under which the determination of the Commission was made is unconstitutional and void. To provide for the contingency that this court may find justification for assuming this broader power in determining the weight of evidence, under a broader interpretation of section 1304 of the Civil Practice Act than that heretofore assigned to it by our highest court, the petitioner has again presented the alleged errors not corrected by this court on the former review. It seems important that we should present our views on this issue at the outset because it underlies our determination of the errors assigned.

The petitioner claims that the order and determination of the Public Service Commission confiscate its property, contrary to the Fourteenth Amendment of the Constitution of the United States, and that, therefore, the petitioner is entitled to have that question

determined by a court exercising its own independent judgment as to both the facts and the law. It has been settled that an order of a State Public Service Commission prescribing a schedule of maximum future rates is legislative in character; and that in such cases, " if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment." (*Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287, 289.) On the strength of this decision of the Supreme Court we are asked to reconsider the limits of our judicial authority in a certiorari to review such a determination. It is practically conceded, however, that in the exercise of its power finally to construe laws of this State, the Court of Appeals has definitely indicated that in such a certiorari proceeding the courts of this State have no power to substitute their own independent judgment upon the facts for that of the Commission. (*People ex rel. N. Y. & Queens Co. Gas Co.* v. *McCall,* 219 N. Y. 84; 245 U. S. 345.) It does not follow, however, that the above decision in *Ohio Valley Water Co.* v. *Ben Avon Borough* necessarily condemns the New York practice and interpretation in certiorari. The very fact that the practice of New York State has received substantial approval by the United States Supreme Court in as recent a case as *People ex rel. N. Y. & Queens Co. Gas Co.* v. *McCall (supra)* leads us to scrutinize the more carefully its more recent decision. In *Ohio Valley Water Co.* v. *Ben Avon Borough (supra)* the United States Supreme Court was considering the law of Pennsylvania as construed by its highest court. The real underlying question in that case was whether the Supreme Court of that State had ruled as a matter of statutory interpretation that the sole method of challenging the validity of such legislative order under the Pennsylvania statute was by the appeal had in that case, to the exclusion of a bill in equity to enjoin enforcement, the unrestricted remedy commonly pursued in such cases. Taking into consideration certain opinions by the State Supreme Court which seemed to indicate that " all objections to the Commission's orders must be determined upon appeal," and taking into consideration the State statute as a whole, the United States Supreme Court was unable to say that a certain other specified section of the local statute " offered an opportunity to test the order so clear and definite that plaintiff in error was obliged to proceed thereunder or suffer loss of rights guaranteed by the Federal Constitution." Since

17

**258**   MATTER OF PENNSYLVANIA GAS CO. *v.* PUB. SERV. COMM.

Third Department, January, 1925.            [Vol. 211

the State Supreme Court had in such circumstances ruled, in effect, that in such exclusive remedy of " appeal " the jurisdiction of the court " stopped short of what must be plainly entrusted to some court in order that there may be due process of law,"— " an adequate judicial hearing as to confiscation," the judgment of the Supreme Court of Pennsylvania was reversed and the cause was remanded there with instructions to take further action not inconsistent with the opinion of the United States Supreme Court. The action suggested was that the State court, in the exercise of its power finally to construe laws of the State, should re-examine the local statutes; and the holding was that the challenged order was invalid only in the event that the court below failed to definitely indicate a construction of the local law which would make available an adequate judicial hearing as to confiscation.   No such condition of statute or statutory construction exists in New York State so far as we can see.   There has been no statute or decision of the Court of Appeals prescribing that certiorari is the exclusive remedy in this State whereby the Commission's orders may be challenged because confiscatory.   There is no statute or decision in this State which we can find which does not leave open to the company, besides the limited review by certiorari, the right to resort to a suit for injunction either in the State or Federal court. The fact is that no difficulty has been experienced in the past in pursuing such a suit in either State or Federal court when challenging the validity of a legislative act or order of this nature, to enjoin its enforcement.   (*Public Service Comm.* v. *Brooklyn Borough Gas Co.,* 189 App. Div. 62; *Prendergast* v. *New York Telephone Company,* 262 U. S. 43; *Belt Line R. Corp.* v. *Newton,* 273 Fed. 272.)   We have no doubt that this common practice, giving an unrestricted remedy, is and has been available to the company in this State in addition to the limited review by certiorari, which distinguishes the decision in *Ohio Valley Water Co.* v. *Ben Avon Borough (supra).* We conclude it to be our duty to follow the practice approved in *People ex rel. N. Y. & Queens Co. Gas Co.* v. *McCall (supra)* which we have adopted in our previous decision in this case and in cases of a like nature.   In such cases we do not substitute our judgment upon the facts for that of the Commission but we exercise the power to review questions of law and we do not examine the facts further than to determine whether there was substantial evidence to sustain the order.   In the present case we may examine the facts to see whether there is substantial evidence on which the valuation of petitioner's gas lands fixed by the Commission could reasonably have been found to be the present value of those lands.   The company is entitled to a reasonable return on the value of the

property used in the public service at the time it is being so used. (*Bluefield Waterworks & Improvement Co.* v. *Public Service Commission of West Virginia*, 262 U. S. 679; *State of Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission of Missouri*, Id. 276.)

The Commission has left in total obscurity its method of arriving at $2,000,000 as the value of the company's gas lands allocated to New York. There may be no statutory duty devolving upon it to make findings but the labor of the court upon the former review has been largely duplicated and there was an unnecessary delay of justice because of the failure of the Commission to explain the processes by which it had arrived at its valuation of the gas lands. We cannot understand even now from a rereading of the various opinions of the Commission how we were in error in our interpretation of the method pursued. The old Commission accepted $12,000,000 as the present value of the gas lands, from which it made improper deductions as indicated by this court. The rate base stated by the old Commission was $2,193,379. Upon the rehearing the new Commission said that it " added to the rate base arrived at by the Commission " the sum of $1,500,000 for physical properties other than gas lands. This sum of $1,500,000 added to the $2,193,379 produces the rate base of $3,693,379, which the Commission in its latest opinion admits was the rate base adopted by it on the rehearing. The Commission further states in its latest opinion: " In reviewing the determination of this Commission the court found that the Commission made no error in its valuation of the company's property, other than gas lands and rights. We, therefore, include in the rate base now found all properties of the company attributable to the State of New York, including related overheads and working capital, and exclusive of gas holdings, at $2,811,088." It is significant that the Commission now readily assumes that it did adopt the figures of the old Commission as to all but the gas lands but insists that in some unaccounted for manner it reached a figure on the gas lands identical with that found by the old Commission down to the last dollar and cent without adopting the old Commission's theory as to deduction for depreciation reserve. Computation readily confirms this coincidence. Subtracting $2,811,088, the value of the other properties, from $3,693,379, the total rate base, we get $882,291, the exact figure allowed for gas lands in the original rate base found by the old Commission. It is inconceivable under any rational basis found in the evidence that the Commission could have found this odd figure of $882,291 by any method other than the adoption of the old Commission's theory of the

deduction of depreciation reserve assumed by us and found to be erroneous in our former decision. And the Commission still fails to explain how it could otherwise happen to reach precisely the same figure, except by stating in general terms that " The rate base found by this Commission was, as stated in its [former] memorandum, determined after an examination of the entire record, irrespective of any theory adopted by the former Commission in arriving at the valuations found by it." If we accept its denial of our assumption as true, we are by so doing compelled to conclude that in such event the finding of $882,291 as the value of the gas lands attributable to New York was arbitrary because unsupported by any proofs that we can find in the record. And whatever its former method of computation, it must have differed from the Commission's present method, since the Commission has now increased the valuation from $882,291 to $2,000,000. And even now the Commission does not reveal its method of reaching either result. It says: " We have considered all of the evidence relating to the value of this Company's gas holdings, and we have allocated to the State of New York, and included in the rate base therefor, the sum of $2,000,000." We are thus relegated to the whole record in order to find whether there is any substantial evidence on which this value could reasonably have been found to be the present value of these lands attributable to New York.

We may start with the conclusion reached by us upon the former review that there was substantial, credible and undisputed evidence that the gas lands were presently worth $12,000,000, of which $3,216,000 was properly allocated to New York by the former Commission. In this connection we quoted with approval from the opinion of that Commission as follows: " The very small amount invested by the company in the property originally, or even the amount at which it is carried upon its books, cannot, I think, be used in lieu of the actual value of the property as reasonably established by many disinterested witnesses." We said of the finding of $12,000,000 as present day actual fair value: " There was necessarily involved in the making of this finding all proper deductions for depletion or depreciation. No further deductions for actual depreciation, therefore, could consistently have been made." That was the effect of the testimony upon any theory in the case, reflecting present day actual fair value of the gas lands, and we further said: " It cannot be said that the sum of $12,000,000 fixed by the Commission as the present fair value of the gas fields, does not reflect value attained by appreciation in excess of a depreciation amounting to $4,155,439.25," a sum which we deduced from the book accounts as properly

applicable under the proofs to replacement in the past of known capital destruction. In disregarding the undisputed testimony of the witnesses who testified to the market value of the Elk county field as from $7,212,000 to $10,000,000 and the Ludlow field $4,000,000, the Commission makes the following statement in its last decision: " It is a fact well known to this Commission, and indeed a matter of public knowledge, that the production of natural gas in the Pennsylvania fields has been progressively diminishing since the year 1917, and there has been considerable complaint by New York as well as by Pennsylvania consumers of this company as to inadequacy of service due to failure of supply. The Pennsylvania Gas Company is a public utility, and as such is subject to regulation. It has been supplying the public with natural gas for nearly forty years. Its operations have been exceptionally profitable, and continue to be. The witness Wyer, testifying for the company, stated that the natural gas business was one of great hazard. The company itself urged that there is great need for gas conservation if the use of the present known source of supply is to be much longer continued. Records may be kept as to original rock pressure, gas withdrawn, and present rock pressure, for the purpose of estimating the quantity of gas remaining in a given field, but of course such gas contents can never be accurately measured, or the duration thereof definitely foretold."

It is apparent that the Commission has set aside the testimony of present market value of these gas lands by considerations not altogether pertinent to the segregated value of this portion of the company's property. It is immaterial " that the production of natural gas in the Pennsylvania fields has been progressively diminishing since the year 1917," since the witnesses testified to the value of these specific fields as of the spring of 1920, the time of the hearing. Moreover if there is a progressively diminishing supply of natural gas in the Pennsylvania fields generally, it is difficult to see why that should not tend to enhance the value of such supply of gas as remained in petitioner's gas fields, under the economic law of supply and demand. Complaints of consumers as to " inadequacy of service due to failure of supply " do not reasonably overcome the specific testimony of the witnesses as to the value of these specific gas lands. The testimony shows that there was a very great increase (sixty per cent) in gas deliveries from 1908 to 1917 with no substantial decrease since 1917 notwithstanding the fact that the Commission's conservation order must have reduced the demand. The complaints were simply with reference to a failure to meet full demands of consumers in

**262** MATTER OF PENNSYLVANIA GAS CO. *v.* PUB. SERV. COMM.

Third Department, January, 1925.                    [Vol. 211

the peak of severe winter weather.   It does not necessarily follow that a failure of supply to meet these demands was due to lack of supply at the fields.   It may have been due to many intervening causes, including the weather or improper service unrelated to the possible supply of gas.   Upon the question of the present value of these gas lands, the testimony of the witnesses as to market value cannot be overcome by assuming, even if true, that the past operations of the petitioner have been exceptionally profitable.   Such a fact is more properly to be reflected, if at all, in the rate of return to be allowed.   Petitioner is entitled to a fair return on the present value of its property used and useful in the service and the dominating element in fixing present value is reproduction cost rather than historical cost or actual cost or prudent investment.   (*State of Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission of Missouri,* 262 U. S. 276; *Bluefield Waterworks & Improvement Co.* v. *Public Service Commission of West Virginia,* Id. 679; *Monroe Gaslight & Fuel Co.* v. *Michigan Public Utilities Commission,* 292 Fed. 139.)   The criticism by the Commission concerning the reliability of rock pressure measurements to determine present gas contents and to foretell duration thereof is not based, so far as we can find, upon any evidence in the record which impeaches the accuracy of petitioner's records or the credibility of its witnesses as to these particular gas fields of the petitioner. The determination must be a reasonable determination based upon the testimony and the records in the case.   The Supreme Court of Pennsylvania has recently passed upon the identical records and testimony contained in the record before us in relation to the value of petitioner's gas fields, with the exception that the company presented two additional witnesses in the New York case. (*Erie City* v. *Public Service Comm.,* 278 Penn. St. 512; 123 Atl. 471.) The Pennsylvania decision involved a similar rate determination by the Pennsylvania Public Service Commission.   That court gave substantial effect to this evidence and reversed the Commission's determination because the latter had apparently had an erroneous conception of it.   The court said: " The Commission, in valuing the gas holdings, stated, ' Taking into consideration the total gas holdings of the respondent, with all the testimony bearing on their present value, we are of the opinion that the used and useful portions attributable to Pennsylvania should be included in the rate base at $5,500,000.'   The lowest value under the evidence was $11,212,000; it is apparent, from what the Commission said, they proceeded on an erroneous conception of the evidence.   Much, if not all, of the same testimony would have been admitted as evidence of market value in condemnation of the same land.   No

attack was made on the competency, sufficiency or credibility of the witnesses to establish the fact of general market value." The proofs show that these gas lands have a market value as lands as a whole or per acre and are not subject to the criticism that they were opinions as to value based upon the sale price per cubic foot of gas. Taking the lowest value given by these witnesses, $11,212,000, and allocating twenty-six and eight-tenths per cent to New York, we find $3,004,816 to be the lowest amount distributable to New York upon the basis of this evidence. The maximum claimed by the company is $12,000,000 with $3,216,000 allocated to New York, as found by the former Commission. The present Commission has allocated into the New York rate base only $2,000,000.

We do not see how the Commission has fixed that value without disregarding the reasonable effect of petitioner's records and testimony as to the present market value of its gas lands. We can only speculate as to the method actually pursued by the Commission whereby a valuation of $2,000,000 was arrived at. There seem to be two ways of reaching substantially that figure. In its latest opinion the Commission refers to the fact that the decision of the Pennsylvania Commission was introduced in evidence on the rehearing. It refers to the fact that the Pennsylvania Commission had reduced the petitioner's rate to fifty cents per 1,000 cubic feet and had included in the rate base a value of $5,500,000 for the gas lands attributable to Pennsylvania. Since the Pennsylvania Commission allocated to Pennsylvania seventy-three per cent of the jointly used property, that Commission must have fixed $7,671,233 as the full value of the gas lands, twenty-six and eight-tenths of which would allocate to New York $2,055,890. This is substantially the figure adopted by the New York Commission and may explain its method. The slight deviation may have been necessary in order to produce the fifty-cent rate per 1,000 cubic feet which the New York Commission has ordered, conforming to the rate found by the Pennsylvania Commission. No value can be attached to the findings of the Pennsylvania Commission in view of the errors assigned to its findings by the Supreme Court of that State. Another method, but less plausible, which may have been adopted by the New York Commission, is that suggested by counsel for the complainant. Counsel refers to original cost at slightly less than $2,000,000 and the company's own conceptions of value of these lands found in its own books, giving a book value of slightly over $8,000,000, coupled with uncertainty as to the quantity of gas remaining in the fields. Allocating twenty-six and eight-tenths per cent of $8,000,000

**264** Matter of Pennsylvania Gas Co. *v.* Pub. Serv. Comm.

Third Department, January, 1925. [Vol. 211

into the New York rate base would produce $2,144,000. Even this is greater than the sum of $2,000,000 allowed by the Commission. Assuming as we must that the company may be held to its own admissions of value as a proper element of sustaining proof, the finding is not in accord with the admission and the admission, if such, seems clearly to rest upon an appraisal made by the company in 1905 which does not take into consideration any possible appreciation in value as of 1920, the time as of which the present decision speaks and must be judged. Moreover, as we said in our former opinion, in which we dealt with the historical cost figures appearing on the company's books, it is apparent that the company had " made certain readjustments, increasing more or less arbitrarily the book value of its assets on the one side of its ledger while increasing its liabilities, such as depreciation, on the other side, in order thereby to strike a balance." Such book-keeping entries are of little value when unsupported by inventory and appraisal and the company seems not to have made such after 1905 until this proceeding or the one in Pennsylvania was commenced. An inventory was completed in the spring of 1920 by an engineering conference composed of representatives from the Pennsylvania Commission, the company and the Pennsylvania complainants. Thereafter this inventory was introduced in evidence in the New York case and the testimony of petitioner's witnesses was read in evidence, fixing a value as of 1920. For all these reasons we think there was not substantial evidence to support the finding of the Commission as to the value of $2,000,000 for the gas lands attributable to New York.

Our attention is called to what seems to be the fact, that the Commission made no allowance whatever for the materials and supplies and capital requirements needed for use in the State of Pennsylvania in order to conduct the New York business. The $111,088 allowed in the rate base seems to cover only the requirements for local distribution and local operation conducted entirely in New York State, omitting requirements for the production and transmission of gas. This seems to have been an error which crept into the original decision at the time when the Commission omitted $1,500,000 as the value of physical properties other than gas lands jointly used in Pennsylvania. We think the Commission should reconsider this item in the light of testimony which it is claimed is undisputed and establishes the necessity of increasing the allowance for both working capital and supplies. We made no reference to this in our former opinion and the Commission in its opinion has assumed that we found no error.

It is claimed that the Commission deducted forty-one per cent

for depreciation on the physical properties other than gas lands located in Pennsylvania as opposed to twenty-nine per cent deducted from similar properties located in New York, although claiming and apparently intending to value both properties on the same basis. The present arguments of the petitioner convince us that this disparity is due to the matter of overheads excluded in the amount taken as representing one class and included in the amount taken as representing the other class. In view of this fact and the fact that the percentage of depreciation set forth in the tax report of 1917 was based on the old book accounts which do not seem to have any probative value and have been found by the Commission to be erroneous and were changed by the consent of the Commission in 1919, we think the Commission should reconsider this element of the case.

While not free from doubt, because of possible confusion of principle between historical cost as against reproductive cost as the measure of present value, we do not feel at liberty to disapprove the action of the Commission in not allowing an additional sum for going concern value in this case, upon the authority of *People ex rel. Kings Co. Lighting Co.* v. *Willcox* (210 N. Y. 479).

In view of our criticisms hereinbefore stated, in regard to the treatment of accrued depreciation in fixing the value of gas lands and other physical properties upon the basis of the book-keeping entries made more or less arbitrarily for the purpose of balancing other book accounts, we think the Commission should reconsider the subject of annual depletion of gas lands and annual depreciation of other physical properties. According to the opinion of the former Commission, the figure $80,990 allowed by the Commission for such annual depletion and depreciation as an operating expense seems to rest solely upon a calculation made from such book-keeping entries and to be contrary to competent and uncontradicted testimony. This item seems to be fairly susceptible of proof as to the current depletion of the gas lands when based upon the actual current rate of depletion, shown by uncontradicted testimony as to scientific rock pressure tests of petitioner's fields during immediately antecedent years. The petitioner also presented testimony tending to prove the rate of depreciation of the other physical properties. It seems quite obvious that the present Commission accepted the theory of the former Commission expressed in the latter's opinion, without according any weight to scientific data and testimony produced by competent and uncontradicted witnesses.

The former Commission expressly excluded Federal income taxes as a part of operating expenses. Obviously the new Commission

**266** MATTER OF PENNSYLVANIA GAS CO. *v.* PUB. SERV. COMM.

Third Department, January, 1925. [Vol. 211

has made no different finding as to that item. Its opinions deal only with the rate base; and computations demonstrate that it made no changes in the original findings as to operating expenses. It seems to be definitely settled that Federal income taxes should be included as a proper operating charge. " Since dividends from the corporation are not included in the income on which the normal Federal tax is payable by stockholders, the tax exemption is, in effect, an additional return on the investment." (*Georgia R. & Power Co.* v. *Railroad Commission of Georgia*, 262 U. S. 625, 633.) The Commission should include the tax as an operating charge but may take the tax exemption into consideration as a part of the return in determining what rate of return would be adequate.

The company had miscellaneous investments in Pennsylvania consisting largely of stocks and bonds. It is our understanding that the value of these investments was not included in the rate base as property used in the New York service. Not having included this value in the rate base we do not see how the Commission could properly conclude to deduct the income from those investments from the revenue otherwise held properly allowable to the company, as was apparently done by the former Commission and adopted by the present Commission. No duplication of return upon this portion of the Company's property is involved and the company is entitled to a return upon its reinvested earnings.

We express no view with reference to the adequacy of an eight per cent rate of return other than to say that we agree with petitioner that the Commission should give consideration to the amount of leakage of gas reasonably necessary in rendering its service and also to any greater intrinsic value to the consumers of petitioner's natural gas, in heat units and price, as compared to manufactured gas and other commodities used as fuel. The hazards of the natural gas business are also relevant facts in determining what will constitute a fair return. So, also, the present value of the plant as compared with its cost and the rate of return which the company has enjoyed through a long period up to the time of the inquiry by the Commission have been held to be relevant circumstances in testing whether the rate fixed is confiscatory. (See cases cited in *Bluefield Waterworks & Improvement Co.* v. *Public Service Commission of West Virginia*, 262 U. S. 679.) Moreover, in this case, involving a transmission of gas in interstate commerce, the local regulation as to return allowed must be of a reasonable character so as to avoid an unreasonable burden upon interstate commerce.

We are asked to hold as matter of law that the petitioner was entitled to recoup for deficiencies of returns resulting from the

Commission's orders of December 23, 1920, and June 15, 1921, which were reversed by this court upon the former hearing. Specifically, the petitioner claims that the Commission should have permitted the company to recoup for loss of revenue due to the erroneous omission of $1,500,000 for physical properties in the original decision and corrected on the rehearing, and for loss of revenue due to deducting $2,333,709 as depreciation reserve from the value of the gas lands which we found to be erroneous. Other losses of similar nature are now claimed, arising out of the other alleged errors which we have been considering. The Supreme Court has recently said that so-called losses from operations in recent years due to insufficiency of previous rates are properly excluded. (*Georgia R. & Power Co.* v. *Railroad Commission of Georgia*, 262 U. S. 625.) It seems possible, however, that this decision was not aimed at losses due to no fault or acquiescence by the company and resulting from rates fixed by public authority resisted by the company and finally held to be inadequate, unjust and confiscatory. There have been later decisions holding that it is proper to make good those losses in the next rate revision. (*Petersburg Gas Co.* v. *Petersburg*, 132 Va. 82; 110 S. E. 533; *Columbus Gaslight Co.* v. *Public Service Commission*, [Ind.] 140 N. E. 538; *Mobile Gas Co.* v. *Patterson*, 293 Fed. 208; *Hackensack Water Co.* v. *Board of Public Utility Com'rs*, [N. J.] 119 Atl. 84; *Streator Aqueduct Co.* v. *Smith*, 295 Fed. 385; *Louisiana Water Co.* v. *Public Service Commission of Missouri*, 294 id. 954.) In *People ex rel. Adirondack Power & Light Corp.* v. *Pub. Serv. Comm.* (200 App. Div. 268) we recognized the right of the Commission to make good any losses suffered under an unfair rate resisted by the company. The question is whether we should say as matter of law in this proceeding that the Commission was required to include the losses claimed by the petitioner in the rate fixed by the order now under review. There are two reasons why we think we should not so hold: *First.* According to the record, counsel for the company seem to have acquiesced in reserving that question for later determination by the Commission and withdrew proofs which the company had intended to present on that question. We cannot say that the Commission did not so understand counsel. If so, the Commission has not made any determination in relation to the matter and we must assume that it will meet the public responsibility committed to it and give due consideration to any losses due to an inadequate rate fixed by its authority. *Second.* The petitioner has acquiesced in leaving the determination of this question to the Commission and has failed to take advantage of other opportunities afforded to it under

which its rights might have been judicially protected. A court of equity might have given relief by injunction and the Supreme Court has indicated that in the case of confiscatory rates fixed by our Public Service Commission, the company would be " without remedy, unless their enforcement should be enjoined." (*Prendergast* v. *New York Telephone Co.*, 262 U. S. 43.) One remedy of the petitioner was to apply for an injunction in a suit in equity. The right to an order of the State Supreme Court, where justice requires it, staying or suspending an order of the Commission fixing any rate is likewise recognized and regulated in subdivision 2 of section 23 of the Public Service Commission Law (as added by Laws of 1914, chap. 240)* and section 1295 of the Civil Practice Act. (*Matter of Iroquois Natural Gas Co.*, 176 N. Y. Supp. 474; *Matter of Peoples Gas, etc., Co.*, 122 Misc. 285.) It seems to us that we must now leave the matter where the petitioner by its own conduct of the case has left it, namely, to the sound and reasonable judgment of the Commission when the question is finally submitted to it. We presume that the Commission will deal fairly with the subject.

The determination should be annulled, with fifty dollars costs and disbursements, and the proceeding remitted to the Commission to revise its findings in accordance with the views expressed in this opinion, with leave to reopen the case to take further evidence if desired.

All concur.

Determination annulled, with fifty dollars costs and disbursements, and proceeding remitted to the Commission, with leave to reopen the case to take further evidence if desired.