CONSOLIDATED WATER COMPANY OF UTICA, N. Y., Plaintiff, *v.* MILO R. MALTBIE and Others, as Commissioners and Constituting the PUBLIC SERVICE COMMISSION (STATE DIVISION, DEPARTMENT OF PUBLIC SERVICE) OF THE STATE OF NEW YORK, Defendants.

Supreme Court, Special Term, Albany County, April 19, 1938.

*Ferris, Burgess, Hughes & Dorrance* [*Thayer Burgess* and *George H. Kenny* of counsel], for the plaintiff.

*Gay H. Brown,* for the defendants.

BERGAN, J. Plaintiff is engaged in business as a public utility supplying water to the city of Utica and communities in its vicinity. Under an order dated June 28, 1933, the defendants constituting the Public Service Commission directed the plaintiff to reduce its rates for water service by the sum of approximately $120,000 per year. Thereafter on July 14, 1933, the plaintiff applied to the Commission for a rehearing, which was denied on August eighth of that year. Plaintiff then applied to the Special Term of this court for an order in certiorari to review the order and determination of the Public Service Commission and such an order was granted on August 25, 1933. Upon the application of the plaintiff, the order of the Public Service Commission was stayed during the pendency of the certiorari proceeding.

The Appellate Division in the certiorari proceeding confirmed the determination and order of the defendants. (*People ex rel. Consol. Water Co.* v. *Maltbie,* 245 App. Div. 866.) The Court of Appeals affirmed the order of the Appellate Division (275 N. Y. 357). Upon application of the plaintiff, leave was obtained to appeal to the Supreme Court of the United States and an order staying the enforcement of the Commission's order pending such appeal was made by Chief Judge CRANE upon condition that the plaintiff give a bond in the sum of $500,000. This undertaking was given on August 3, 1937.

Upon motion of the defendants, the United States Supreme Court thereafter on February 14, 1938, dismissed the appeal (*People ex rel. Consolidated Water Co.* v. *Maltbie,* 303 U. S. 158; 58 S. Ct. 506; 82 L. Ed. 489). The plaintiff contended before the Supreme Court that it was entitled to the exercise of the independent judgment of a court as to the law and the facts with respect to the

issue of confiscation and that such a review had not been accorded because of the limitations imposed by the State practice in certiorari proceedings. The Supreme Court, in dismissing the appeal, said in its *per curiam* opinion: " Appellant has no standing to raise this question as appellant itself sought review by certiorari and has not invoked the plenary jurisdiction of a court of equity and it does not appear that this remedy is not available under the State law."

The plaintiff promptly commenced this action on February 18, 1938. Two causes of action are pleaded in the complaint. The first is based upon the theory that the Commission's order was confiscatory at the time it was made and continues to be confiscatory; that the true value of the plaintiff's property at the time the order of the Commission was made, and since such time, has been at least \$12,738,200 , and that t he Commission's valuation of \$5,850,000, and the rate based upon such valuation, results in the confiscation of the plaintiff's property. The second cause of action proceeds upon the theory that, assuming the Commission's determination of the value of plaintiff's property to have been correct when made, by reason of changes in price levels since then, the value of the property has increased since 1932 when the Commission reached its valuation, and since 1933 when the order was made, and that these changes in actual value have resulted in confiscation under the order of the Commission. A decree in equity restraining the enforcement of the orders thus alleged to have been confiscatory, constitutes, in substance, the prayer for relief.

Plaintiff applied at the Special Term of March eleventh for a temporary injunction, and during the pendency of that motion a stay has been granted. The defendants, at the Special Term of April eighth, have applied for an order dismissing the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action, on the further ground that the court has not jurisdiction of the subject of the action, and upon the ground that there is existing a final judgment or decree of a court of competent jurisdiction rendered on the merits determining the same cause of action between the parties. The questions raised upon these motions will be determined together.

It is conceded at the outset by the defendants that an action in equity lies in this State by a public utility for relief against confiscation resulting from an order of the Public Service Commission, notwithstanding the right to the review afforded by certiorari. Defendants contend, however, that where a public utility proceeds by certiorari and a determination is had, thereafter the door to equitable relief in a plenary action is closed.

It is at least debatable whether the right to equitable relief against confiscation of property has heretofore been fully sanctioned while there is available to the utility a proceeding in certiorari to review an order of the Commission. In certiorari the power vests in the court, not only to review the sufficiency of the evidence before the Commission, but to grant relief where " any rule of law affecting the rights of the parties has been violated to the prejudice of the petitioner." (Civ. Prac. Act, former § 1304, subd. 3, now Civ. Prac. Act, § 1296, subd. 5.) This, clearly, is intended, among other things, to authorize relief against confiscation of property in contravention of constitutional immunities, and so it has been frequently construed. (See *Matter of Rockland Light & Power Co.* v. *Maltbie*, 241 App. Div. 122.) The remedy authorized is something more than a mere determination whether the petitioner in the proceedings before the Commission has been afforded the " procedural due process ". discussed in *Railroad Commission* v. *Pacific Gas & Electric Co.* (302 U. S. 388; 58 S. Ct. 334), decided by the United States Supreme Court on January 3, 1938. Whether there has been confiscation of property, however, and a resulting violation of a rule of law affecting the rights of the parties, will necessarily and usually be considered only in the aspect of the findings of the Commission in respect of the valuation of the property involved, and, in that aspect, the scope of review afforded by certiorari concededly is quite limited.

The right to equitable relief, while there remains also available the right to the parallel proceeding in certiorari, has been approved in general language by the Appellate Division, Third Department, in two cases, in neither of which, however, was the point directly involved. In *Matter of Pennsylvania Gas Co.* v. *Public Service Comm.* (211 App. Div. 253), Mr. Justice HINMAN, writing for the court, which there decided that there was no authority in certiorari for the court to substitute its judgment upon the facts for that of the Commission, said (p. 258): " The fact is that no difficulty has been experienced in the past in pursuing such a suit [in equity] in either State or Federal court when challenging the validity of a legislative act or order of this nature, to enjoin its enforcement. * * * We have no doubt that this common practice, giving an unrestricted remedy, is and has been available to the company in this State in addition to the limited review by certiorari." And in *Matter of New Rochelle Water Co.* v. *Maltbie* (248 App. Div. 66), Mr. Justice HEFFERNAN, writing for the court, said (p. 70): " We have never held that a utility must have recourse to certiorari, rather than to equity, to review an order of the Public Service Commission upon constitutional grounds. No such holding was

made or intended in *New York State Electric & Gas Corp.* v. *Maltbie* (241 App. Div. 780; affd., 266 N. Y. 521.)"

In *Brooklyn Borough Gas Co.* v. *Public Service Commission* (17 State Dept. Rep. 81) an action in equity upon a complaint alleging confiscation was tried in the First District before Judge HUGHES as referee, and the effect of this decision as *res adjudicata* was considered in *Public Service Comm.* v. *Brooklyn Borough Gas Co.* (189 App. Div. 62). There seems also to have been prosecuted in this court a plenary action in equity by the Kings County Lighting Company against the Public Service Commission, which resulted in a judgment entered March 29, 1920, the effect of which was considered in *Kings County Lighting Co.* v. *Nixon* (268 Fed. 143), which was a similar suit prosecuted in the District Court.

On the other hand, in the case of *New York State Electric & Gas Corp.* v. *Maltbie (supra)*, referred to in the *New Rochelle Water Company* decision *(supra)*, the determination of the Special Term (147 Misc. 560) that a complaint in equity alleging the invasion of plaintiff's constitutional rights stated a cause of action was reversed and the complaint dismissed by the Appellate Division (241 App. Div. 780). The reversal was affirmed by the Court of Appeals (266 N. Y. 521). The reversal rested upon the ground that the plaintiff had " another adequate remedy." That remedy, so it was argued in the Court of Appeals (p. 522), was by certiorari. The invasion of plaintiff's constitutional rights there alleged to have resulted from the order of the Public Service Commission was that it was deprived of its property without due process of law, deprived of the equal protection of the law and that the order impaired the obligation of its contracts. These constitutional immunities, granting to the complaint in that action the benefit of the facts alleged, since the reversal was apparently not based upon the insufficiency of the allegations of fact, are surely of no less significance or importance than the immunity against confiscation of property relied upon here, and it is difficult, indeed, if the rule there laid down is to be followed, to distinguish the cases.

Moreover, the right to attack a statutory rate fixed by the Legislature in an action in equity on the ground of confiscation of property, upheld by the Court of Appeals in *Municipal Gas Co.* v. *Public Service Comm.* (225 N. Y. 89), followed a prior determination by the court in *People ex rel. Municipal Gas Co.* v. *Public Service Comm.* (224 N. Y. 156), that relief in certiorari would not lie. " Our ruling was that the Commission had no power to supersede the statutory rate, and that for confiscation, however unlawful, there must be recourse to other remedies." (CARDOZO, J., *Municipal Gas Co.* v. *Public Service Comm., supra,* at p. 94.)

Upon the question of the confiscation of its property this plaintiff is entitled to an independent judicial determination of the law and the facts. (*Ohio Valley Water Co.* v. *Ben Avon Borough*, 253 U. S. 287.) There it was said upon ample Federal authority, concerning the legislative act of fixing public utility rates, that "In all such cases, if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submission of that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment" (p. 289). Clearly certiorari does not in this State afford a remedy in the scope indicated. (*People ex rel. New York & Queens Gas Co.* v: *McCall*, 219 N. Y. 84; affd., 245 U. S. 345; *People ex rel. Consol. Water Co.* v. *Maltbie, supra,* p. 370.) If such relief is to be had at all in New York, it must necessarily be found for all practical purposes in a plenary action in equity. In this action, accordingly, plaintiff will be afforded the benefit of the independent judgment of the court upon the valuations involved and upon the resulting effect of the order of the defendants as amounting to the purported confiscation of its property. The judicial function, however, upon such an inquiry, "does not go beyond the decision of the constitutional question." (*Los Angeles Gas & Electric Corp.* v. *Railroad Comm.*, 289 U. S. 287, 305.)

As heretofore pointed out, the judicial determination of the fact of value is usually of controlling importance upon the question of confiscation. In discussing the judicial power of the United States thus exercised, the Supreme Court has said: "The case of confiscation is illustrative, the ultimate conclusion almost invariably depending upon the decisions of questions of fact." (*Crowell* v. *Benson*, 285 U. S. 22, 60.)

The limitations upon judicial power in relation to the exercise of the legislative rate-fixing function were fully and carefully analyzed by Chief Justice Hughes in 1936 in *St. Joseph Stock Yards Co.* v. *United States* (298 U. S. 38). "In determining the scope of judicial review," he said (pp. 50, 51), "there is a distinction between action within the sphere of legislative authority and action which transcends the limits of legislative power. Exercising its rate-making authority, the Legislature has a broad discretion. * * * The court does not sit as a board of revision to substitute its judgment for that of the Legislature or its agents as to matters within the province of either. * * * When the Legislature itself acts within the broad field of legislative discretion, its determinations are conclusive."

In the class of acts within the scope of legislative power, it was further held that the judicial inquiry goes no further than to ascertain "whether there is evidence to support the findings." This is what, under the New York practice in certiorari, is commonly the remedy available. But it is important to notice that such a review rests upon the assumption or the finding that the legislative process was carried out within its field of discretion and has not invaded constitutional immunities. When that situation arises the judicial obligation to inquire is both different and greater. In this field the court continues: "The Constitution fixes limits to the rate-making power by prohibiting the deprivation of property without due process of law or the taking of private property for public use without just compensation. When the Legislature acts directly, its action is subject to judicial scrutiny and determination in order to prevent the transgression of these limits of power. * * * This is the purport of the decisions with respect to the exercise of an independent judicial judgment on the facts where confiscation is alleged."

Upon that branch of the judicial inquiry which concerns itself with the safeguards against invasion of the constitutional immunity against confiscation, the duty of the court stops when it sees to it that a rate is not fixed below the line of confiscation. As pointed out by Mr. Justice CARDOZO (*West Ohio Gas Co.* v. *Public Utilities Commission*, 294 U. S. 63, 70), "Our inquiry * * * is whether the action of the State officials in the totality of its consequences is consistent with the enjoyment by the regulated utility of a revenue something higher than the line of confiscation."

The rule deducible from these authorities, stated simply, is that where the legislative determination is made within the field of constitutional power, the court will merely examine what has been done and the manner of its doing to see that there are facts and reason to support the determination made, but when the field of constitutional power has been exceeded in the exercise of this function, the court will exercise whatever power of inquiry may be indicated as necessary, to hear and determine the complaint of an invasion of constitutional immunities.

Upon the allegations of confiscation of its property stated in both causes of action in the complaint, this court should entertain the suit now brought by the plaintiff. The Supreme Court has declined, upon the plaintiff's appeal, to consider the merits of its contention that it has not had the benefit of the exercise of the independent judgment of a court as to the facts upon the issue of confiscation, because the plaintiff had not, at the time such appeal

was taken, sought to invoke the jurisdiction of this court in equity, and it did not appear to the Supreme Court that the remedy is not available.

Whatever may have been the uncertainties of our judicial policy heretofore, I think we are bound in deference to that opinion to entertain this action. Having exhausted the remedy that has been, at least, the common means in this State of reviewing rate determinations of the defendants, and having raised the question in that proceeding that it has not been granted the benefit of an independent judicial judgment upon the facts on the question of confiscation to which it is entitled as a matter of right, and the limitations in certiorari ruling out this scope of relief, having been reiterated by the Court of Appeals, upon the appeal to that court the plaintiff is, in effect, remitted here by the Supreme Court for such equitable action as we may be willing to entertain. Either our practice gives no place to such plenary judicial inquiry, in which event relief against confiscation must be sought in the Federal judicial system, or our practice admits of the remedy, and this complaint should be sustained. Under the principles that have been discussed the plaintiff is entitled to this scope of relief, which, until now, has not been afforded.

It is argued by defendants that plaintiff has chosen its remedy and should not now be permitted to start at the very beginning of a new and different judicial inquiry. A long period of time has elapsed since the rate was fixed by defendants, occupied by the certiorari proceeding and the successive appeals. The prospect of a new inquiry which may, perhaps, occupy an equally long period undoubtedly casts some reflection upon the efficiency of a judicial system which permits it. But I am satisfied that the certiorari proceeding was instituted in good faith by the plaintiff and in the belief of its counsel, not unreasonably entertained, that as long as there remained available a review by certiorari, it would be successfully urged in answer to an action in equity, as in the *New York State Electric & Gas Corporation* case, that plaintiff had " another adequate remedy." Here that other remedy has been pursued and it has failed to be adequate in affording an independent judicial judgment of the facts.

This, perhaps, in all its aspects in relation to the Federal constitutional question, and in view of the decision of the Supreme Court in *People ex rel. New York & Queens Gas Co.* v. *McCall (supra)*, could not reasonably be ascertainable until the Supreme Court dismissed plaintiff's appeal. I think we must accept the consequences of this long and tortuous method arising from the uncertainties of our practice, and do what can reasonably be done to

attain a prompt adjudication of the issues. If the case settles the point of practice, I am not apprehensive that a court of equity will hereafter be deliberately imposed upon and utilized as an instrument of dilatory evasion by a public utility of the exercise by defendants of the power to fix fair rates. Certainly in a proper case and under a settled practice, the court can and will decline to take jurisdiction in equity after certiorari has been exhausted where resort should in the first place have been had to a plenary action. That is not the case here and the motion to dismiss the complaint upon these grounds is denied.

There remains the further question raised by defendants' motion under subdivision 5 of rule 107 of the Rules of Civil Practice, that there is an existing final judgment or decree rendered on the merits determining the same cause of action between the parties. The confiscation pleaded in the second cause of action resulting from changes in conditions, is clearly not a subject upon which an adjudication was had in the certiorari proceeding. Upon the question of a changed condition operating to render confiscatory an order fixing rates, originally valid, see generally *United Railways Co.* v. *West* (280 U. S. 234); *Smith* v. *Illinois Bell Telephone Co.* (282 id. 133, 160, 161). So it was held in *Kings County Lighting Co.* v. *Nixon* (268 Fed. 143; affd., 258 U. S. 180), referred to above on another point. There the prior and different adjudication in equity of the State court was disregarded in the light of conditions shown to have changed. Upon the question of changed conditions affecting an originally valid legislative act fixing a rate, see, also, *Municipal Gas Co.* v. *Public Service Comm. (supra).*

The first cause of action presents a different problem. It must be conceded that the question of confiscation pleaded is not a merely abstract question, or one wholly novel to the antecedent proceeding in certiorari. On the contrary, here, as in the certiorari proceeding, it depends upon the valuation of plaintiff's property. But under a well-established principle of the doctrine of *res adjudicata,* a party is precluded from litigating again only a question that has been or could have been determined in the prior litigation. The very purpose of this action is to obtain the independent judgment of the court upon the question of confiscation, *i. e.,* the value of plaintiff's property. That has not been had, nor has any adjudication by a court having plenary power to inquire into the facts been obtained or obtainable in the review undertaken. I conclude, accordingly, that the doctrine of *res adjudicata* is not applicable to either cause of action pleaded.

Authorities relied upon by defendants are distinguishable on the ground that in each instance a scope of inquiry different and broader

than that available in New York's certiorari was had upon the former adjudication. In *Napa Valley Electric Co.* v. *Railroad Comm.* (251 U. S. 366) the Supreme Court of California was shown to be vested with the power (although only on the record coming up to it from the Commission) to inquire whether the order " violates any right of the petitioner under the Constitution of the United States " (p. 371). For all that appears this power of inquiry could be broadly exercised. It is important, too, that the question of confiscation under the Constitution seems not to have been raised in the bill presented to the court (p. 369).

In *Detroit & Mackinac R. Co.* v. *Michigan R. Comm.* (235 U. S. 402) the procedure authorized to review an order of the Commission was a suit in the State Court of Chancery, under which statutory provision was made for the taking of additional evidence to be transmitted to the Commission. In *Central Kentucky Natural Gas Co.* v. *Railroad Comm.* (37 F. [2d] 938) it was said, concerning the effect of a proceeding in pursuance of a State remedy, upon the right thereafter to a bill in equity in the Federal courts, that the question of *res adjudicata* arising in such a suit (either in the State or the Federal court), among others, is whether under the procedure theretofore had, there has been exercised an " independent judgment on both the law and the facts as to the question of confiscation " (p. 943).

The review afforded under the statute in Washington, considered in *Puget Sound Electric R. Co.* v. *Lee* (207 Fed. 860), was quite different in scope than certiorari here, and granted ample opportunity for an independent examination of the facts (p. 862).

The failure of the plaintiff to apply for an increase of rates prior to bringing this action does not operate to defeat its second cause of action. The Commission has denied plaintiff's application for a rehearing (Complaint, ¶ 9). This denial constitutes a final legislative act. The matter has now " reached the judicial state entitling the company to resort to the court for relief. * * * It was not necessary that the company should apply to the Commission for a rehearing before resorting to the court." (*Prendergast* v. *New York Telephone Co.*, 262 U. S. 43, 48.)

The final question is plaintiff's right to a temporary injunction. If adequate relief is to be given in equity in this case, it is essential that the status be preserved, with proper safeguards to the consumers, until there can be an adjudication. The motion for a temporary injunction is granted upon the following conditions: 1. That an undertaking be furnished by plaintiff in the sum of $120,000 to provide repayment to its consumers of the difference between the rate continued under the temporary injunction and the rate fixed by the defendants for a period of one year, with the right of defend-

ants, if the litigation is not concluded at such time, to apply for further security. 2. That the injunction be vacated if, for any reason attributable to plaintiff, a trial of the issues has not been commenced by June 1, 1938.

The temporary injunction so granted shall not operate to stay or prevent the enforcement of any independent cause of action or right thereto that may exist under the conditions of the undertaking given by the plaintiff on August 3, 1937, with the Fidelity and Deposit Company of Maryland as surety in pursuance of the order of Judge CRANE.

Plaintiff may submit an order in accordance with this memorandum. The papers and exhibits used upon these motions may be obtained by the respective parties.