In the Matter of the Application of THE NEW ROCHELLE WATER COMPANY, Petitioner, for a Certiorari Order against MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, and the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Defendants.

Third Department, June 25, 1936.

*Whitman, Ransom, Coulson & Goetz* [*Jacob H. Goetz, Richard Joyce Smith, Neile F. Towner* and *James J. Kirwin, Jr.,* of counsel], for the petitioner.

*Sherman C. Ward, Acting Counsel for Public Service Commission,* [*John J. Donohue* of counsel], for the defendants.

HEFFERNAN, J.  Petitioner was incorporated February 13, 1885, pursuant to the provisions of " An Act in relation to the creation and formation of water-works companies in towns and villages of the State of New York." (Laws of 1873, chap. 737.)  On September 15, 1927, it merged the Pocantico Water Company, Inc., under section 85 of the Stock Corporation Law of the State of New York.  It has two operating divisions in Westchester county, viz., the New Rochelle division, serving certain municipalities, and the Pocantico division, serving other municipalities.

The proceeding resulting in the order of the Public Service Commission now under review was instituted by the Commission upon complaints filed by municipal officials and patrons of petitioner as to the rates charged by petitioner for water furnished in the territory supplied by it.  Numerous hearings were held and the record of the testimony introduced comprises many thousand pages and hundreds of exhibits.  The Commission determined that the rates charged by petitioner for water furnished in its New Rochelle division should be reduced by about $245,000 per year, or approximately twenty-five per cent; that such rates, as reduced, would produce an amount sufficient, after payment of all expenses, to provide a return of at least six per cent upon the present value of the property used and useful in furnishing such service; and that no reduction was justified in the rates charged by petitioner for water furnished in its Pocantico division, as the rates then in force did not produce an income in excess of a fair return.

The capital structure of petitioner can be best described by the statement that on December 31, 1934, it had issued and outstanding:

| | |
|---|---:|
| 50,000 shares of common stock without par value, with stated value of | $1,000,000 |
| 19,500 shares of seven per cent cumulative preferred stock, par value $100 | 1,950,000 |
| Twenty-five year five and one-half per cent gold bonds due November 1, 1951, face amount | 4,466,000 |
| Twenty-five year five per cent gold bonds due November 1, 1951, face amount | 1,425,000 |
| Total | $8,841,000 |

No consent to the issuance of these securities was required or obtained from the Public Service Commission. The general rates in force in the New Rochelle division have been in effect since August, 1926; in the Pocantico division they have been in effect since May, 1919. At the time of the issuance of its outstanding securities and the fixation of its rates the Public Service Commission had no jurisdiction over the operations of water works corporations. Article 4-B of the Public Service Law, giving the Commission jurisdiction over water works corporations, was enacted as chapter 715 of the Laws of 1931; in effect July 1, 1931.

Petitioner urges that the determination of the Commission should be annulled on various grounds, the principal ones of which are that the Commission failed to fix rates that are just and reasonable, that the rates so fixed are confiscatory and that it acted arbitrarily and without evidence in deducting amounts from the rate base for accrued depreciation on a straight-line formula.

The pertinent provisions of section 89-j of the Public Service Law, which provides what factors the Commission must take into consideration in fixing rates, are, " the Commission may, by order, fix just and reasonable prices, rates or charges for water * * *. In determining the price to be charged for water the Commission may consider all facts which in its judgment have any bearing upon a proper determination of the question * * * with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies."

It will thus be seen that the statute makes it mandatory on the part of the Commission in fixing just and reasonable rates to take into consideration the capital actually expended by a utility for property required in the rendition of public service. The Commission is not required, however, to provide a return upon the capitalization of such utility.

Petitioner asserts that on this review it is entitled upon the question of confiscation to the court's independent judgment as to both law and facts upon which the Commission's determination has been based. Whatever the rule in the Federal courts may be the courts of this State are definitely committed to the proposition that in a proceeding such as this we do not and cannot substitute our judgment upon the facts for that of the Commission. We review only questions of law and do not examine the facts further than to determine whether there was substantial evidence to sustain the determination. (*People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84; affd., 245 U. S. 345; *Matter of Pennsylvania Gas Co.* v. *Public Service Commission*, 211 App. Div. 253; *Niagara Falls P. Co.* v. *Water P. & C. Comm.*, 267 N. Y. 265.) Nothing to the contrary was determined in *New York State Electric & Gas Corp.* v. *Maltbie* (241 App. Div. 780; affd., 266 N. Y. 521.) In that case plaintiff instituted an action to enjoin the Commission from enforcing an order requiring the company to make certain book entries, alleging, among other things, that such order violated plaintiff's constitutional rights. This court reversed the order of the Special Term denying the Commission's motion for judgment dismissing the complaint " on the ground that the plaintiff has another adequate remedy." We have never held that a utility must have recourse to certiorari, rather than to equity, to review an order of the Public Service Commission upon constitutional grounds. No such holding was made or intended in *New York State Electric & Gas Corp.* v. *Maltbie* (*supra*).

We may not interfere with or set aside rates fixed by a regulatory Commission as unreasonably low unless we find that such rates are confiscatory. In *Matter of Rockland Light & Power Co.* v. *Maltbie* (241 App. Div. 122) this court, speaking through Presiding Justice HILL, said: " The court on this review is limited to the enforcement of constitutional rights. We may not interfere with the determination made by the Commission unless confiscation is established and upon that question the petitioner has the burden of proof. Rate making is a legislative function. The result may be reached by the exercise of legislative discretion and the use of legislative rather then judicial methods. These methods and the process may be examined by the court for their bearing upon the validity of the determination made. However, judicial jurisdiction does not go beyond the constitutional question."

The Commission determined that the original cost of petitioner's used and useful property in its New Rochelle division amounted to $4,187,198. There is no substantial difference as to this item between petitioner's witnesses and those who represented the

Commission. Included in this amount there is an item for organization expense of $30,000. Petitioner contends that its organization expense on both divisions is $1,034,800, $776,000 of which should be allocated to the properties in its New Rochelle division. Petitioner summarized this claim as follows:

Preliminary and development expense:

| | | |
|---|---:|---:|
| Legal expenses of promoter............. | $3,000 | |
| Engineering expenses of promoter....... | 25,000 | |
| | | $28,000 |
| Fee to promotion group (in stock).............. | | 200,000 |
| Corporate costs prior to construction: | | |
| Legal expenses and incorporation fee.... | $15,200 | |
| Salaries of officers for two months...... | 3,000 | |
| | | 18,200 |
| Security issue costs: | | |
| Taxes on bond and stock issues......... | $30,880 | |
| Cost of bonds, stock certificates and mortgage......................... | 8,481 | |
| Legal costs......................... | 20,000 | |
| | | 59,361 |
| Bankers' spread................................ | | 718,200 |
| | | $1,023,761 |
| Interest on cash expenditures: | | |
| $105,561 at seven per cent per year during eighteen months of active construction................. | | 11,084 |
| | | $1,034,800 |

It is apparent that practically the entire amount relates to the issuance of stock and promoters' fees and expenses. The Commission found that only $18,200 of this sum represented anything having to do with the organization of the company. The Commission was not required to include in base value any allowance for issuance of stock and promoters' fees and expenses. (*Los Angeles Gas & Electric Corp.* v. *R. R. Comm.*, 289 U. S. 287; *Galveston Elec. Co.* v. *Galveston*, 258 id. 388.)

The Commission determined that the reproduction cost of petitioner's property in its New Rochelle division amounted to $4,253,086. Petitioner contends that in determining the reproduction cost new of its property the Commission based its determination on depressed prices prevailing as of November 1, 1932. In his report the hearing Commissioner stated that he arrived

at a reproduction cost new as of April 1, 1934. In its memorandum on this subject the Commission said: " While this reproduction cost represents the property inventoried as of November 1, 1932, it ·does not represent ' spot ' reproduction cost as of that date. Instead, it reflects the upward trend of prices after that date and up to April 1, 1934. If a reproduction cost as of November 1, 1932, had been determined, it would have been less."

There is evidence to sustain the finding of the Commission on this subject.

The most troublesome question in this proceeding is the Commission's finding as to the amount of accrued depreciation existing in petitioner's property in its New Rochelle division. The Commission deducted from the rate base cost new, accrued depreciation of $1,285,849. It then found that the present value of petitioner's property used and useful in furnishing service to consumers in its New Rochelle division on which it was entitled to a return amounted to $2,930,000. The amount of the accrued depreciation was computed by the Commission on the straight-line formula.

The hearing Commissioner reported that " no depreciation figures were presented by any witness based upon the straight-line method." This statement is affirmed in the Commission's brief in which it is said, " it is also admitted that no witness testified as to the amount of depreciation existing in petitioner's property by applying the straight-line method."

The only estimates of depreciation of property from condition new contained in the record were those made as of November 1, 1932, and none of them was based on the straight-line formula. The highest on the New Rochelle division was $643,441, the lowest $137,740, and the Commission's engineer's $503,393. The Commission computed an accrued depreciation of $1,158,374 as of November 1, 1932, and an additional sum of $127,475 to December 31, 1934, making the total $1,285,849. As to the straight-line computation applied to the period subsequent to November 1, 1932, there is no testimony whatsoever in the record. The Commission's engineer on cross-examination stated that he could not tell what depreciation might occur after that date. He said: " I cannot express any opinion in regard to the future depreciation of this property." This witness said that the total depreciation was $503,393 according to his method of calculation. He said that if figured by the straight-line method the accrued depreciation would be $1,048,629. The Commission's deduction of $1,285,849 for depreciation computed upon the straight-line formula was determined not merely as an issue of fact but rather as one of law. In its memorandum the Commission said: " It seems, therefore,

that so far as rate cases are concerned, the rule of law in this State is that the Public Service Commission may utilize the straight-line method for determining accrued depreciation."

It is apparent that in determining accrued depreciation the Commission disregarded the testimony of all the witnesses and made its own estimate of depreciation upon its own formula of straight-line computation. The Commission in fixing rates chargeable by a public utility may not base its orders on facts *dehors* the record concerning which the utility had no knowledge and no opportunity to be heard in respect thereto. (*People ex rel. Judge* v. *Public Service Comm.*, 192 App. Div. 837; *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.*, 227 U. S. 88; *United States* v. *Abilene & So. R. Co.*, 265 id. 274; *West Ohio Gas Co.* v. *Public Utilities Commission of Ohio, No. 1*, 294 id. 63; *Schechter Poultry Corp.* v. *United States*, 295 id. 495.) The Commission in this case without any competent testimony in the record on the straight-line method made a deduction for accrued depreciation of an amount twice as large as the largest amount estimated by any witness. Its computation of depreciation is a mere paper calculation unsupported by any proof whatsoever. Its determination in this respect is arbitrary, illegal and confiscatory. We are not to be understood as holding that the straight-line method of computing depreciation is to be condemned in every case. Its application in some instances is entirely proper. (*People ex rel. Manhattan R. Co.* v. *Woodbury*, 203 N. Y. 231; *People ex rel. Cent. H. G. & E. Co.* v. *State Tax Comm.*, 218 App. Div. 44.) To justify its use, however, it must be based upon competent testimony. " All relevant facts may be considered in determining value, but consideration is to be given facts, not formulas." (*Matter of New York Edison Co.* v. *Maltbie*, 244 App. Div. 436.) The judicial ascertainment of value for the purpose of deciding whether rates are confiscatory " is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts." (*Los Angeles Gas & Electric Corp.* v. *R. R. Comm., supra.*)

In this case the Commission by the use of a straight-line formula arrived at an amount of accrued depreciation equal to thirty-one per cent of its rate base new. This finding is not based on any testimony as to any observation of the physical property. In fact the pipe representing about eighty per cent of the total value of the property is buried below the ground and consequently it is impossible to make any visual observation of its condition. The Commission's conclusion, therefore, is pure conjecture. " A finding without evidence is arbitrary and baseless." (*Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co., supra.*)

We are also convinced that the Commission improperly deducted from the rate base amounts of money which it assumed to have been contributed for main extensions.

The proof discloses that the Commission deducted from the amount of its depreciated base cost for the New Rochelle division the sum of $334,000 which it held to be equivalent to amounts paid by petitioner's consumers for main extensions and main and service deposits. The hearing Commissioner deducted $129,086 for these items but the Commission increased the deduction to $334,000.

It appears from the evidence that petitioner kept three book accounts, designated consumers service deposits, consumers extension deposits, and contributions for extensions.

The first of these represents deposits made to guarantee the payment of consumers' bills. These deposits are interest bearing and are refundable upon the discontinuance of service.

The second account represents the actual cost of property owned by petitioner and included in its fixed capital accounts, but installed either by it or by real estate developers. These deposits are also subject to refund upon the happening of certain contingencies within a specified time. If not refunded within the specified period they are then transferred to the third account and are not refundable thereafter. The deposits represent debts of petitioner at least to the extent that they are subject to refund.

Contributions for extensions are made subject to the express condition that such extensions shall be the property of petitioner and exclusively subject to its control. Petitioner is obligated to maintain and replace such property at its own expense.

It is undisputed that petitioner has title to all the inventoried property, including that paid for in whole or in part out of advances by consumers.

For rate-making purposes petitioner is entitled to earn a reasonable return upon the value of all property used and useful in providing the service and the Commission had no authority to deduct from such value the sums advanced by consumers for extensions, title to which is in petitioner. (*Brooklyn Union Gas Co.* v. *Prendergast*, 7 F. [2d] 628; modfd. and affd., 272 U. S. 579.) The source of the money used to purchase the property employed in rendering service has no bearing upon the right to compensation for the service. (*Board of Commissioners* v. *New York Telephone Co.*, 271 U. S. 23.)

Other questions are presented in the briefs of counsel but in view of our conclusion we think it unnecessary to discuss them.

The determination should be annulled and the matter remitted to the Commission, with fifty dollars costs and disbursements to petitioner.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

Determination annulled and matter remitted to the Commission, with fifty dollars costs and disbursements to the petitioner.